UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN YAEGER,
    Plaintiff,

v.                                                  Case No.  8:18-cv-2474-T-35TGW

MICHAEL SCOTT LOWRY, RYAN
BALSEIRO, SHAWN M. LUNGHI,
BREANNA C. RODRIGUEZ, and
BENJAMIN D. THOMPSON,
    Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Michael Scott Lowry, Ryan Balseiro, Shawn M. Lunghi, Breanna

C. Rodriguez, and Benjamin D. Thompson,[1] in their respective individual capacities,

by and through undersigned counsel and pursuant to FEDERAL RULE OF CIVIL

Procedure 12(b)(6), move this Honorable Court to Dismiss the *Fourth Amended*

*Complaint* (Docs. 96, 96-1, 96-2, 96-3, and 96-4), and as grounds states:

## LEGAL PROCEEDINGS

On October 5, 2018, Yaeger filed a *Complaint* (Doc. 1), against Bradley Lively,

Deputy "Michael Lawry," Residence Inn Marriott, and the Hillsborough County

Sheriff's Office relating to events on April 15, 2017, and his resulting arrest at the

---

[1] These appear to be the Defendants named in Yaeger's *Fourth Amended Complaint*. This *Motion to Dismiss* is filed without waiving any service of process defenses that may be applicable.

Residence Inn Marriott in Brandon, Florida. On October 17, 2018, this Court Ordered Yaeger to file an amended complaint using the required civil rights complaint form. (Doc. 6).

On November 5, 2018, Yaeger filed a *First Amended Complaint* (Doc. 9), against Bradley Lively, Residence Inn Marriott, Deputy "Michael Lawry," and the Hillsborough County Sheriff's Office. On November 20, 2018, this Court entered an *Order* (Doc. 12), dismissing the claims against Bradley Lively, Residence Inn Marriott, and the Hillsborough County Sheriff's Office and allowing that "Yaeger may pursue his claim against only Deputy Lawry." (Doc. 12, p. 2).

On May 28, 2019, Yaeger filed a motion for leave to file a *Second Amended Complaint* (Doc. 32), which was granted. (Doc. 36). The *Second Amended Complaint* (Doc. 38), brought claims against Deputy Michael Scott Lowry, Sergeant Ryan M. Balseiro, Deputy Shawn M. Lunghi, Deputy Breanna C. Rodriguez, and Deputy Benjamin D. Thompson. On December 10, 2019, Defendants filed a *Motion to Dismiss* (Doc. 42). On February 18, 2020, Yaeger filed a *Motion Opposing Defense's Motion to Dismiss*. (Doc. 48).

This case was then stayed by this Court pursuant to Yaeger's multiple requests. (See E.g., Docs. 50-61).[2]

---

[2]    This includes Yaeger's requests to stay this case because: He was in transit to his new prison (Doc. 50, p. 3); His transfer was delayed while "all federal prisons are locked down" due to the coronavirus (Doc. 52, p. 2); Prison transfers were still suspended. (Doc. 54, p. 2); Yaeger was not at his designated prison due to the coronavirus lockdown (Doc. 56, p. 2); and because Yaeger was not sure if he would be transferred

On November 19, 2021, due to the lengthy delay caused by Yaeger's multiple requests for a stay, this Court entered an *Order* (Doc. 65), directing Defendants to file a renewed or updated motion to dismiss.

On December 6, 2021, Defendants filed an updated *Motion to Dismiss* (Doc. 66), directed at the *Second Amended Complaint.* Yaeger failed to file a response to said *Motion to Dismiss,* and instead, on May 31, 2022, filed a *Third Amended Complaint* (Doc. 81), against Deputy Michael Scott Lowry, Sergeant Ryan M. Balseiro, Deputy Shawn M. Lunghi, and Deputy Breanna C. Rodriguez. On June 14, 2022, Defendants filed their *Third Motion to Dismiss* (Doc. 82), directed at the *Third Amended Complaint.*

On August 29, 2022, Yaeger filed a *Motion for Leave to Amend Complaint* (Doc. 91), to file a fourth amended complaint, claiming that he only recently learned that shotgun pleadings were disfavored. On September 14, 2022, Defendants filed their *Objection to Plaintiff's Motion for Leave to Amend Complaint.* (Doc. 92).

On September 15, 2022, Yaeger filed another *Motion Seeking Court Order to Stay Proceedings.* (Doc. 93). The grounds for Yaeger's requested stay are that "he is being transferred to an unknown federal Prison Camp to participate in the Residential Drug Abuse Program." (Doc. 93, p. 1).

On September 22, 2022, this Court entered an *Order* (Doc. 94), denying Yaeger's requested stay (Doc. 93), denying Defendants' *Third Motion to Dismiss* (Doc.

_____

to a different prison.  (Doc. 60, p. 2).

82), granting Yaeger's motion for leave to file a *Fourth Amended Complaint*. (Doc. 91), and granting Defendants until October 24, 2022, to file a new motion to dismiss. On October 17, 2022, Yaeger's *Fourth Amended Complaint* was docketed. (Docs. 96, 96-1, 96-2, 96-3, and 96-4).

The *Fourth Amended Complaint* purportedly contains two causes of action: (1) A claim under 42 U.S.C. § 1983, against all Defendants, for an alleged violation of Yaeger's Fourth Amendment right to be free from a warrantless search and unlawful seizure of his person and property; and (2) A claim under 42 U.S.C. § 1983, against only Defendant Lowry, for an alleged violation of Yaeger's Fourth Amendment right to be free from malicious prosecution by arrest without probable cause.

## FACTUAL BACKGROUND - UNDISPUTED

On April 15, 2017, Yaeger was arrested at a Residence Inn in Hillsborough County, Florida for Trafficking in Amphetamine 28-200 grams, Possession of Drug Paraphernalia, Trespass in an Occupied Structure, Resisting an Officer Without Violence, and two fugitive warrants. (Doc. 96-1, p. 10-11). Yaeger was prosecuted for those crimes in Thirteenth Judicial Circuit Case Number 17-CF-5646. (Doc. 96-1, p. 10-11; See also Case 17-CF-5646, Information dated April 25, 2017).[3]

---

[3] This Court is entitled to take judicial notice of filings in other Courts pursuant to FED. R. EVID. 201(b) or (c). *See E.g., Silva-Martinez v. Florida D.O.C.,* 808 Fed.Appx. 846 (11th Cir. 2020); *Grayson v. Warden, Ala. Dep't of Corr.,* 869 F.3d 1204 (11th Cir. 2017). Accordingly, Defendants request this Court take judicial notice of the filings in State of Florida 17-CF-5646, Middle District of Florida Case 8:17-MJ-01607-AEP, and Eastern District of Virginia, Alexandria Division, Case 1:17-CR-241 AJT.

Yaeger admits that "[o]n August 21, 2017, the Florida state charges were dropped in favor of the federal prosecution... Yaeger was transferred to the custody of the United States Marshall and transported to the Alexandria Detention Center." (Doc. 82-1, p. 2).

In the United States District Court for the Eastern District of Virginia, Case 1:17-CR-241-AJT, Yaeger was charged with violating 21 U.S.C. § 846, Conspiracy to Distribute 50 grams or More of Methamphetamine. (Doc. 82-3, p. 1). As later stipulated and admitted by Yaeger, the Federal charges were based, in part, on the charges from the April 15, 2017, Hillsborough arrest, including that from November 2015 through April 15, 2017, Yaeger: (1) Conspired to distribute 50 grams or more of methamphetamine; (2) Obtained multiple quantities of methamphetamine to re-distribute; (3) Used hotels and apartments in Virginia, Florida, New Jersey, and elsewhere, to receive, possess, and distribute methamphetamine; and (4) Obtained, manufactured, and utilized counterfeit and unauthorized debit and credit cards to further the drug conspiracy. (Doc. 82-2, pp. 2-3).

Yaeger later pled guilty in Case 1:17-CR-241-AJT, and was sentenced to 168 months in prison. (Doc 82-3, p. 2). At Yaeger's request, he was given "credit for time served, including time served in state custody in Florida awaiting trial." (Doc. 82-3, p. 2).

Yaeger's conviction in Case 1:17-CR-241-AJT, has not been reversed, expunged, declared invalid, or otherwise called into question.

## STANDARD OF REVIEW

In determining whether to grant a motion to dismiss, a Court should consider the allegations in the four corners of a complaint as true and construe it in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D. Fla. 1995).

However, although the pleadings of a pro se litigant are held to a less stringent standard, even a pro se litigant must meet minimal pleading standards. *Haines v. Kerner*, 404 U.S. 519 (1972); *Olsen v. Lane*, 832 F.Supp. 1525 (M.D. Fla. 1993). Conclusory allegations and unwarranted deductions of fact are not accepted as true. *Gersten v. Rundle*, 833 F.Supp. 906, 910 (S.D. Fla. 1993) (quoting *Assoc. Builders. v. Ala. Power*, 505 F.2d 97, 100 (5th Cir. 1974)).

A complaint is subject to dismissal if the facts pled do not state a claim that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). To be considered plausible on its face, a complaint must contain facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## MEMORANDUM OF LAW

### I.   Yaeger Failed to State a Cause of Action in Claim One

Claim One asserts that the Deputies violated Yaeger's civil rights by depriving him "of his Fourth Amendment right to be free from warrantless search and unlawful seizure of his person and property by unlawfully entering the Residence Inn Tampa Sabal Park Hotel located at 9719 Princess Palm Ave, Suite 225, Brandon, Florida 33619 without probable cause and without a search warrant." (Doc. 96-1, p. 15).

In support of this claim, Yaeger asserts that at 10:08 a.m., on April 15, 2017, Residence Inn Customer Service Manager Brandon Lively (hereafter "Lively"), came to Yaeger's hotel room, Suite 225, accompanied by Deputies.  (Doc. 96-1, p. 8). Lively told Yaeger that he wanted Yeager to leave right away due to fraud on Yaeger's reservation and because Yaeger was trespassing.  (Doc. 96-1, p. 8).  Yaeger refused to open the door or vacate the premises and instead insisted that he was entitled to stay until check-out time or 12:00 p.m.  (Doc. 96-1, p. 8).

Lively then authorized the Deputies to use force entry into the room, and they entered and took Yaeger into custody.  (Doc. 96-1, p. 9).  Yaeger alleges he was seized "without probable cause."  (Doc. 96-1, p. 9).

Yaeger alleges that the Deputies then searched Suite 225 without a warrant

or his permission[4] and they found "3.5 grams[5] of crystal methamphetamine, drug paraphernalia, and ID making equipment." (Doc. 96-1, p. 9-10).

As a result of the events from April 15, 2017, Yaeger was charged and prosecuted in the Thirteenth Judicial Circuit, Case 17-CF-5646, and later in the Eastern District of Virginia, Alexandria Division, Case 1:17-CR-241-AJT. Yaeger ultimately pled guilty to the charges in Case 1:17-CR-241-AJT. (Doc. 82-5, p. 1).

Yaeger argues that the Deputies violated his civil rights by unlawfully entering Residence Inn Suite 225 without probable cause or a search warrant.

However, Yaeger's arguments are misplaced under the facts he alleges in the *Fourth Amended Complaint,* including Yaeger's recitation and reliance on case law regarding Fourth Amendment protections for homes or private residences.

Yaeger admits that, at the time he refused to open the door to Suite 225, he was aware that his reservation had been terminated due to suspected fraud, that he was considered to be trespassing, and that he was being told to leave immediately. (Doc. 96-1, p. 7-8). Yaeger further admits that he refused to comply and would not open the door to Suite 225 or leave the Residence Inn. (Doc. 96-1, p. 7-9).

---

[4] Yaeger admits that he signed a waiver of the requirement for a search warrant, but alleges that occurred after the initial search. (Doc. 96-1, p. 10).

[5] For the purposes of this *Motion to Dismiss,* Yaeger's allegation that only 3.5 grams of methamphetamine were found is accepted. However, Criminal Report Affidavit HS17011385 states that Deputies found 5.8 grams of amphetamine in plain view in a clear bag; 128.6 grams of amphetamine liquid in a bong; and an additional .2 grams of amphetamine.

At the time of the Deputies' entry into Suite 225, they had been informed by the Customer Service Manager that Yaeger was no longer a lawful occupant of the hotel room and was, in fact, trespassing.  Moreover, Yaeger had already refused Lively and the Deputies' requests to open the door and vacate the premises.

"The protections afforded to individuals under the Fourth Amendment depend on whether the individual had 'a legitimate expectation of privacy in the invaded place.' *U.S. v. Cunag,* 386 F.3d 888, 893 (9th Cir. 2004)." *U.S. v. Valdarnini,* 314 F.Supp.3d 1312, 1317 (M.D. Fla. 2018).  "[T]he exclusionary rule does not apply to those who cannot "invoke the privacy of the premises searched." *Id., Rakas v. Illinois,* 439 U.S. 128, 141 n. 9 (1978).

Under the circumstances alleged in the *Fourth Amended Complaint,* Yaeger no longer had any legitimate expectation of privacy in Suite 225, since it had been obtained under fraudulent circumstances and Yaeger no longer had any right to be on the premises since he had been trespassed by a Residence Inn representative.

In *U.S. v. Wai–Keung,* 845 F.Supp. 1548 (S.D. Fla. 1994), the Court acknowledged the general rule that the occupant of a hotel room has a legitimate expectation of privacy similar to a tenant of a house or the occupant of a boarding house. *See U.S. v. Stoner,* 376 U.S. 483, 489 (1964).  However, that Court recognized that there were several circumstances that could extinguish such an expectation of

privacy. One of those circumstances is where the occupant paid for the room using a credit card without permission or fraudulently. *Citing to U.S. v. Carter,* 854 F.2d 1102 (8th Cir. 1988). "Once the [hotel] found out that the rooms were guaranteed with a fraudulent credit card, it had every right to terminate the occupancy of the rooms occupied by the Defendants." *U.S. v. Wai-Keung,* 845 F.Supp. 1548, 1564 (S.D. Fla.1994). "Society should not recognize an expectation of privacy in a hotel room obtained fraudulently and we do not believe that such an expectation is legitimate or reasonable." *Id. See also, U.S. v. Starks,* 2019 WL 410472, *2 (N.D. Georgia 2019); *U.S. v. Newman,* 2020 WL 5913826, * 4 (E.D. Wisconsin 2020).

In *U.S. v. Valdarnini,* 314 F.Supp.3d 1312 (M.D. Fla. 2018), Fabio Valdarnini rented Room 1681 at Disney's Art of Animation Hotel using a credit card that later was reported as fraudulent. Hotel representatives entered the room while Valdarnini was not there and observed what appeared to be materials related to credit card fraud in plain view. Hotel representatives then contacted the Orlando Secret Service, who responded to the hotel and were let into the room and observed the materials related to credit card fraud. Valdarnini was later arrested, charged criminally, and he filed a motion to suppress related to the search of his hotel room. Valdarnini's motion to suppress was denied because (1) Valdarnini's occupancy of the room had been procured by fraud and (2) the hotel had taken affirmative steps

to repossess the room. *Citing to U.S. v. Cunag,* 386 F.3d 888, 894 (9th Cir. 2004); *U.S. v. Dorais,* 241 F.3d 1124, 1128 (9th Cir. 2001). In *U.S. v. Spicer,* 549 F. App'x. 373 (6th Cir. 2013), that Court recognized that a hotel may lawfully terminate a guest's occupancy for unauthorized activity, such as possessing illegal drugs.

In *U.S. v. Cunag,* 386 F.3d 888 (9th Cir. 2004), Cunag sought to suppress stolen mail that law enforcement officers seized from a hotel room that he had procured by registering under a false name, using a dead woman's credit card, and providing forged identification documents. That Court compared such fraudulently acquired occupancy to a "burglar plying his trade in a summer cabin during the off season." *U.S. v. Cunag,* 386 F.3d 888, 894 (9th Cir. 2004). The Court found that such a burglar would not have a Fourth Amendment privacy interest in the summer cabin because they would not have a "legitimate" expectation of privacy.

Accordingly, the facts alleged in the *Fourth Amended Complaint,* establish that Yaeger did not have a legitimate expectation of privacy in Residence Inn Suite 225, on April 15, 2017, and therefore his civil rights claim fails to state a cause of action for a violation of the Fourth Amendment and should be dismissed, with prejudice.

## II.    Yaeger has Failed to State a Cause of Action in Claim Two

Claim Two asserts that Deputy Michael Scott Lowry (hereafter "Deputy Lowry"), violated Yaeger's civil rights to "be free of Malicious Prosecution without probable cause" related to Deputy Lowry's arrest of Yaeger and initiation of a

criminal prosecution with the State Attorney's Office.  (Doc. 96-1, p. 17-18).

To establish a federal malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures[6] in addition to the elements of the common law tort of malicious prosecution.  *Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir. 2002).

In Florida, the elements of malicious prosecution are: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.  *Debrincat v. Fischer,* 217 So.3d 68, 70 (Fla. 2017).

In support of Claim Two, Yaeger argues that the State charges in Case 17-CF-5646, were "terminated in the Plaintiff's accused favor."  (Doc. 96-1, p. 18)

However a "bona fide termination" of a proceeding in a plaintiff's favor has been described as meaning "that the first suit, on which the malicious prosecution is based, ended in a manner indicating the original defendant's (and current

---

[6]   As established above in regards to Claim One, Yaeger has failed to adequately state a claim for a violation of his civil rights under the Fourth Amendment.

Page 12 of  25

plaintiff's) innocence of the charges." *Valdez v. GAB Robins,* 924 So.2d 862, 866 (Fla. 3d DCA 2006). *See also Laskar v. Hurd,* 972 F.3d 1278 (11th Cir. 2020); *Ware v. U.S.,* 971 F.Supp. 1442 (M.D. Fla. 1997).

"Only terminations that indicate that the accused is innocent ought to be considered favorable." *Woodard v. Oakman,* 885 F.Supp.2d 1216, 1233 (N.D. Ala. 2012).

In this case, it is undisputed that the resolution of Yaeger's State criminal charges did *not* indicate his innocence since he was later convicted of the Federal charges in Case 1:17-CR-241-AJT, which Yaeger repeatedly admits were based, in part, on the charges from the Hillsborough arrest on April 15, 2017.[7] (Doc. 82-2).

Also, the *Fourth Amended Complaint's* bare and conclusory allegations insufficiently allege that there was an absence of probable cause for the original proceeding, that there was any malice by Deputy Lowry, or that Yaeger suffered any damages as a result of the original State criminal charges.

Accordingly, Yaeger has not and can not adequately allege the required elements for a civil rights action for malicious prosecution and he has failed to state a cause of action in Claim Two and such claim should be dismissed by this Court, with prejudice.

---

[7] Yaeger has repeatedly stipulated and admitted that the Federal charges in Case 1:17-CR-241 -AJT, were based, in part, on the charges from the Hillsborough arrest on April 15, 2017. (*See E.g., Statement of Facts* (Doc. 82-2), Yaeger's *Plea Agreement* (Doc. 82-5), and Yaeger's *Position with Respect to Sentencing* (Doc. 82-1)). Moreover, Yaeger requested, and received, credit for the time he spent in Florida state custody awaiting trial as credit towards his federal sentence "because those charges were dropped in favor of federal prosecution." (Doc. 82-1, p. 2)

**III.    Yaeger's Claims are Barred by *Heck v. Humphrey***

All of the allegations in the *Fourth Amended Complaint* are based on the events

of April 15, 2017, wherein Yaeger was arrested by Deputies at the Residence Inn in

Hillsborough County.

Yaeger admits that the charges against him were initially brought in State of

Florida Case 17-CF-5646, which was dismissed in favor of charges in the Eastern

District of Virginia, in Case 1:17-CF-00241-AJT.  (See Fn. 7, above).  In the Federal

case, Yaeger pled guilty to Conspiracy to Distribute 50 Grams or More of

Methamphetamine.  (Doc. 82-3, p. 1).

The stipulated facts in 1:17-CR-00241-AJT, include the *Statement of Facts* (Doc.

82-2), *Plea Agreement* (Doc. 82-5), and Yaeger's *Position with Respect to Sentencing*

(Doc. 82-1), wherein Yaeger acknowledges and incorporates the charges in

Hillsborough County on April 15, 2017, into his guilty plea.  Moreover, Yaeger

requested, and received, credit for the time he spent in Florida state custody

awaiting trial as credited towards his federal sentence "because those charges were

dropped in favor of federal prosecution." (Doc. 82-1, p. 2).

As a result, the claims brought by Yaeger in the *Fourth Amended Complaint*

arise entirely from events related to his criminal conviction.  Yaeger's lawsuit is

predicated on his claim that the entry into the hotel room was unlawful, thus

implying the subsequent search, seizure, and arrest were unlawful.

Accordingly, Yaeger's allegations in this lawsuit directly implicate the validity of his guilty plea to the criminal charges arising, in part, from the events of April 15, 2017, at the Residence Inn.

*Heck v. Humphrey*, 512 U.S. 477 (1994), held that a person seeking damages for an allegedly unconstitutional conviction or imprisonment must have the conviction or sentence reversed on appeal, expunged by court order, subject to a federal writ of *habeas corpus,* or otherwise declared invalid before a 42 U.S.C. § 1983 claim can proceed. *Heck v. Humphrey,* 512 U.S. 477, 486 (1994).

*Heck* stands for the proposition that if a plaintiff was convicted of the underlying criminal offense, then absent a reversal of the conviction, it would be inconsistent to allow a civil case to go forward in light of the criminal conviction. *Heck v. Humphrey,* 512 U.S. 477 (1994). When a plaintiff brings a 42 U.S.C. section 1983 suit for monetary damages that "would necessarily imply the invalidity of his conviction or sentence," the suit "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated," *Yeager v. Binford,* 2019 WL 630296 citing *Heck* at 487. The purpose of this rule is "to limit the opportunities for collateral attack on state court convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of issues." *Yeager* citing *Abella v. Rubino*, 63 F.3d 1063 (11th Cir. 1995).

Accordingly, if Yaeger's claims in the *Fourth Amended Complaint* are successful,

the validity of his criminal conviction could be contradicted, which would violate

*Heck v. Humphrey*, 512 U.S. 477 (1994).  As a result Yaeger's Claims in the *Fourth*

*Amended Complaint* violate *Heck v. Humphrey*, and should be dismissed, with

prejudice.

## IV.   Yaeger's Claims are Precluded by Judicial Estoppel

The equitable doctrine of judicial estoppel is intended to protect courts against

parties who seek to manipulate the judicial process by changing their legal positions

to suit the exigencies of the moment.

The doctrine of judicial estoppel rests on the principle that "absent any good

explanation, a party should not be allowed to gain an advantage by litigation on one

theory, and then seek an inconsistent advantage by pursuing an incompatible

theory." *Ryan Operations v. Santiam-Midwest*, 81 F.3d 355, 358 (3d Cir. 1996) (quoting

18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure § 4477 (1981)).   Judicial estoppel "is applied to the calculated assertion

of divergent sworn positions ... [and] is designed to prevent parties from making a

mockery of justice by inconsistent pleadings." *McKinnon v. Blue Cross*, 935 F.2d 1187,

1192 (11th Cir.1991);  *Helson v. Nuvell Financial*, 2006 WL 1804583, *2 (M.D. Florida

2006).  Accordingly, a party is precluded from asserting a claim in a legal proceeding

that is inconsistent with a claim taken by the same party in a previous proceeding.

*Barger v. Cartersville*, 348 F. 3d 1289, 1293 (11th Cir. 2003)(citing *Burnes v. Pemco*, 291

F. 3d 1282 (11th Cir. 2002)).

The applicability of judicial estoppel turns on two factors: (1) whether the allegedly inconsistent statements were made under oath in a prior proceeding; and (2) whether the inconsistencies were calculated to make a mockery of the judicial system. *Barger v. Cartersville*, 348 F. 3d 1289, 1293-1294 (11th Cir. 2003). "For purposes of judicial estoppel, intent is a purposeful contradiction-not simple error or inadvertence." *Barger v. Cartersville*, 348 F. 3d 1289, 1294 (11th Cir. 2003).[12]

In this case, the totality of the circumstances clearly establish that Yaeger's previous statements were made under oath and that his intent with this lawsuit is to make a mockery of the judicial system. For example, in the Federal criminal case, Yaeger: (1) Stipulated to a *Statement of Facts* that, inter alia, established that he conspired to possess and distribute 50 grams or more of methamphetamine, participated in an access device fraud scheme, and participated in a bank fraud scheme (Doc. 82-2; Doc. 82-1, p. 8); (2) Admitted to a supervisory role in the conspiracy (Doc. 82-1, p. 12); (3) Admitted that the Florida charges were dropped "in favor of federal prosecution" (Doc. 82-1, p. 1, 2); (4) Admitted that "[o]n April 15, 2017, [he] was arrested in Hillsborough County, Florida on drug charges related to the instant drug conspiracy [charged in the Federal case]" (Doc. 82-1, p. 2); (5)

---

[12]  However, in *Slater v. U.S. Steel.*, 871 F.3d 1174 (11th Cir. 2017), the Supreme Court indicated a preference to consider all the facts in determining whether the Plaintiff had the requisite intent to make a mockery of the judicial system.

Admitted his "egregious conduct" in his *Motion for Compassionate Release* (Doc. 82-4, p. 18); (6) Admitted he was addicted to methamphetamine up to the date of his arrest on April 15, 2017 (Doc. 82-1, p. 3, 8); (7) Admitted that he "engaged in extensive fraudulent activity" (Doc. 82-1, p. 11); (8) Agreed in the *Plea Agreement* that he pled guilty because he was "in fact guilty of the charged offense" (Doc. 82-5, p. 2); (9) Was adjudged guilty of Conspiracy to Distribute 50 grams or More of Methamphetamine in the *Judgment* (Doc. 82-3); (10) Waived his right to appeal the criminal conviction in the *Plea Agreement* (Doc. 82-5, p. 4); (11) Agreed to cooperate fully and truthfully with the United States in the *Plea Agreement* (Doc. 82-5, p. 6); (12) Received a one-level reduction in the offense level for assisting authorities in the investigation and prosecution of his conduct (Doc. 82-6, p. 1); (13) Agreed in the *Plea Agreement* to forfeit the "computers, telecommunications devices, and other electronic devices seized at hotel room utilized by [Yaeger] in Hillsborough County, Florida, in April 2017 (Doc. 82-5, p. 9); (14) Requested credit for time served in State custody for the State charges (Doc. 82-1, p. 2); and (15) Received credit for time served in State custody for the State charges. (Doc. 82-3, p. 2).

After the conclusion of his Federal criminal case, Yaeger filed the case at bar and in his *Fourth Amended Complaint* makes assertions that are directly contrary and inconsistent to his position and statements in Federal case 1:17-CR-00241-AJT.  For example, in this lawsuit: (1)  Yaeger claims that he did not commit fraud in making

and paying for the reservation at the Residence Inn (Doc. 96-1, p. 7); (2) Yaeger asserts that he was a "paid customer" who could not have been trespassing on April 15, 2017 (Doc. 96-1, p. 8); (3) Yaeger asserts he "was falsely imprisoned 130 days" before the State criminal charges were dismissed (in favor of the Federal criminal charges) (Doc. 96-1, p. 11); (4) Yaeger claims that he experienced "humiliation, emotional distress, pain and suffering, increased expenses, including legal fees due to the retention of Counsel, and reputational harm" (Doc. 96-1, p. 11); (5) Yaeger claims that there was *no probable cause* to charge him "with trespassing, drug paraphernalia, and resisting arrest and with one felony count, being drug trafficking between 28 grams to 200 grams of crystal methamphetamine (Doc. 96-1, p. 10); (6) Yaeger repeatedly asserts in the *Fourth Amended Complaint* that the State criminal charges were dismissed (*See E.g.,* Doc. 96-1, pp. 11, 18), but fails to acknowledge, as he does in the Federal criminal case, that said charges were "dropped in favor of federal prosecution." (*See E.g.,* Doc. 82-1, p. 1); and (7) Yaeger asserts that Deputy Lowry acted "*without probable cause*" in arresting him because State "criminal case 17-CF-5646, was terminated in the Plaintiff's accused favor." (Doc. 96-1, p. 18).

Also, in the Federal criminal case, Yaeger filed a *Motion for Compassionate Release,* wherein he states "[t]here is no doubt the charges that brought the Defendant to prison are quite serious and the Defendant has no one but himself to blame for his egregious conduct" (Doc. 82-4, p. 18). However, said *Motion for*

*Compassionate Release* was filed in the Federal criminal case *after* Yaeger commenced this litigation and *after* Yaeger was aware of the Defendants' *Heck v. Humphrey* and Judicial Estoppel arguments.[13]

It is clear that Yaeger's claims in this case constitute a purposeful contradiction of his statements, testimony, and stipulations in his Federal criminal case, and are intended to make a mockery of the judicial system. It is completely contrariant to plead guilty, request leniency for acceptance of responsibility, request credit for time served because the charges plead to were related to the incarceration, request compassionate leniency while blaming "no one but myself" and then concurrently claim to be a civil rights victim and claim to have been "falsely imprisoned" on the State charges, based on the same facts.

Accordingly, Yaeger's claims in the *Fourth Amended Complaint* make a mockery of the judicial system and Yaeger's claims should be dismissed, with prejudice, due to judicial estoppel.

## V.     Yaeger has Failed to Overcome the Deputies' Qualified Immunity

Qualified immunity protects government officials from liability in 42 U.S.C §1983 actions as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

---

[13] Yaeger's *Motion for Compassionate Release* (Doc. 82-4), is dated May 14, 2021. Defendants began filing motions to dismiss containing *Heck v. Humphrey* and judicial estoppel arguments as early as Dec. 10, 2019. (See E.g. *Motion to Dismiss Second Amended Complaint* (Doc. 42)).

*v. Fitzgerald*, 475 U.S. 800, 818 (1982). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Moreover, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-201, (2001), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *See also Pearson v. Callahan*, 555 U.S. 223 (2009).

Because qualified immunity shields government actors in all but exceptional cases, courts should think "long and hard" before stripping defendants of immunity. *Lassiter v. Alabama A & M*, 28 F.3d 1146, 1149 (11th Cir. 1994).

In this case, the Deputies are entitled to dismissal due to qualified immunity because Yaeger fails to sufficiently allege a claim of a constitutional violation of clearly established law. This requirement is to provide defendants with facts with "sufficient detail for Defendants to understand what alleged rights were violated ... and which of their actions allegedly violated those rights" as well as "for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

In determining whether qualified immunity applies, the Defendants have the initial burden of proving that they were acting within their discretionary authority

at the time of the alleged wrongdoing. *Vinyard v. Wilson,* 311 F.3d 1340, 1345 (11th Cir. 2002). Yaeger does not appear to dispute that the Deputies were acting within their discretionary authority as law enforcement officers at all material times.

As such, Yaeger has the burden to show that it would be inappropriate to extend qualified immunity to the Deputies through a two-step process. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). To satisfy the first prong, Yaeger must show that the Deputies' conduct amounted to a constitutional violation. To satisfy the second prong, Yaeger must show that the right which was violated was "clearly established" at the time of the violation. The second prong is determined by analyzing whether the right was clearly established by: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005).

As to the first prong in this case, it is clear that, as discussed above, Yaeger has failed to state a case for a constitutional violation in either Claim One or Claim Two. Claim One fails because Yaeger had no expectation of privacy in his fraudulently obtained hotel room and because he had been trespassed. Claim Two fails because, as Yaeger concedes, the State proceedings were not resolved in a manner that

indicated his complete innocence and Yaeger cannot establish the elements for a malicious prosecution claim.

However, assuming that this Court finds that Yaeger sufficiently alleged a constitutional violation for which the Deputies may be liable, it is clear that Yaeger cannot satisfy the second prong that the law was clearly established to provide the Deputies with fair notice that their actions were prohibited. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The first way for a right to be clearly established, is if there is previous binding case law that makes it obvious to a reasonable government actor that their actions violate federal law. *See E.g., Anderson v. Creighton*, 483 U.S. 635, 640 (1987). As discussed above, there is no such case law that applies to the facts of this case. In fact, the relevant cases discussed above lead to the conclusion that the Deputies' conduct was appropriate and lawful. Therefore, Yaeger cannot show that the law is "clearly established" that his allegations amount to a constitutional violation. Rather, the case law discussed above strongly supports the conclusion that no constitutional violation occurred.

The "relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194 (2001); *See also Wilson v. Layne*, 526 U.S. 603 (1999); *Pearson v. Callahan*, 555 U.S. 223 (2009). In this case, the Deputies could not have reasonably predicted that their conduct was

unlawful given the facts that Yaeger alleges from April 15, 2017.  In addition, none of the other ways to establish that the Deputies' conduct was clearly established as unlawful apply since there are no applicable broad statements in the Constitution, statutes, or case law and the Deputies' conduct was not so egregious that a reasonable official would have inherently known such acts were unlawful.  *See E.g., Spivey v. Elliott*, 41 F.3d 1497 (11th Cir. 1995).  Therefore, even when the facts are taken as alleged by Yaeger, the Deputies' actions were not unreasonable and did not violate any clearly established laws.

Accordingly, the Deputies' conduct, as alleged by Yaeger in the *Fourth Amended Complaint*, does not come close to that demonstrable level of outrageousness that case law requires to find a constitutional violation and overcome the Deputies' qualified immunity.  *See E.g., Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005).

As a result, Yaeger's claims in the *Fourth Amended Complaint*, should be dismissed, with prejudice, due to the Deputies' qualified immunity.

WHEREFORE, Defendants Michael Scott Lowry, Ryan Balseiro, Shawn M. Lunghi, Breanna C. Rodriguez, and Benjamin D. Thompson, in their respective individual capacities, based upon the arguments herein, respectfully seeks the entry of an Order Dismissing Yaeger's *Fourth Amended Complaint*, with prejudice, together with such further Orders as justice demands.

Page 24 of  25

Respectfully submitted this 24th day of October, 2022.

/s/ Christopher E. Brown - Trial Counsel
Christopher E. Brown, Esq.
Florida Bar No.: 0986010
Attorney for Defendants
2008 E. 8th Avenue
Post Office Box 3371
Tampa, Florida 33601
Telephone (813) 247-8092
Facsimile (813) 242-1817
chrisbro@teamhcso.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the instant *Motion to Dismiss* with the Clerk of Court using the CM/ECF system and that a true and correct copy of the foregoing has been furnished by U. S. Mail, postage prepaid, to: Shawn Yaeger, Federal Reg. #23618-112, Fort Dix -FCI, 5756 Hartford Street & Pointville Road, Post Office Box 2000, Joint Base MDL, NJ 08640-0902, *Pro Se Plaintiff*, on this the 24th day of October, 2022.

/s/ Christopher E. Brown - Trial Counsel
Christopher E. Brown, Esq.