# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SHAWN YEAGER,

     Plaintiff,

v.                                 Case No. 8:18-cv-2474-TPB-TGW

BRADLEY LIVELY, *et al.*,

     Defendants.

_____/

## **O R D E R**

Yaeger's action under 42 U.S.C. § 1983 alleges that the defendants violated his civil rights when police officers forced their way into and searched his hotel room without a search warrant. Yaeger alleges (1) that he was residing inside the Residence Inn hotel and that his paid stay would expire at noon on April 15, 2017, and (2) that, two hours before expiration of his paid stay the hotel manager called police to evict Yaeger as a trespasser. Deputies from the Hillsborough County Sheriff's Office arrived and, at the manager's instruction, forcibly entered Yaeger's room. Based on a search of the room, Yaeger was arrested and charged with trespassing, drug trafficking, possessing drug paraphernalia, and resisting arrest.[1]

---

[1] Yaeger was charged with these offenses in state court, but the charges were dropped in favor of federal charges in Virginia, which ended with his plea agreement to conspiracy to distribute 50 grams or more of methamphetamine and federal imprisonment for 168 months.

## I.  BACKGROUND

An earlier order dismisses the Hillsborough County Sheriff's Office and both the hotel and its manager (Doc. 12), and another order stays Yaeger's claims against defendant Deputy Sheriff Michael Lowry because of his temporary active-duty military assignment.  (Docs. 36)  In March 2020 this action was stayed and administratively closed (Doc. 51) pending Yaeger's transfer to another institution and surgery on both arms for nerve damage, which transfer and surgery were delayed due to the COVID-19 pandemic.  On June 3, 2022, the action was re-opened upon the filing of Yaeger's Third Amended Complaint.  (Doc. 81)

This action proceeds under Yaeger's Fourth Amended Complaint (Doc. 96), which Yaeger filed in response to Defendants' Motion to Dismiss the Third Amended Complaint.  The court permitted the fourth pleading because, although untimely under the stipulated case management report, the "proposed Fourth Amended Complaint includes two separate counts (and causes of action) and specifically identifies which Defendants are assigned liability for each count[, and] under these circumstances the Fourth Amended Complaint is a considerably improved pleading that will both help the district court's review of this action and ensure an intended claim is not overlooked." (Doc. 94 at 2)  In accord with an earlier order, the action is now ripe for review under the Fourth

Amended Complaint, Defendants' Motion to Dismiss,[2] Yaeger's opposition, and Defendants' reply.  (Doc. 96, 98, 111, and 113)

## II.  MOTION TO DISMISS

Defendants move (Doc. 98) under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss the complaint for failing to state a claim upon which relief can be granted.  A *pro se* complaint receives a generous interpretation, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), and *Kirby v. Siegleman*, 195 F.3d 1285, 1289 (11th Cir. 1999), and the allegations in the complaint are viewed in the light most favorable to the plaintiff.  *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  However, the need to generously construe a *pro se* pleading "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).  The allegations of fact and any reasonable inference must combine to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] An earlier order (Doc. 78) continued the stay of Yaeger's claims against Dep. Lowry, who was never served with process and who as of April 2022 remained on indefinite active duty with the National Guard. However, Dep. Lowry moves to dismiss Yaeger's claims, which motion is "filed without waiving any service of process defenses that may be applicable." (Doc. 98 at 1, n.1)

### III.  UNDISPUTED FACTS[3] AND BACKGROUND

Using the alias "Jonathan Pochop," Yaeger was a registered guest at the Residence Inn in Tampa, Florida, with a reservation from April 3 to April 15, 2017.  On April 14th Yaeger attempted to extend his reservation for two more days, but on the morning of April 15th the reservation service advised the Residence Inn that Yaeger used a fraudulent credit card for the reservation.  At 10 a.m. on April 15th the hotel manager advised Yaeger to vacate the premises immediately notwithstanding the normal noon check-out deadline two hours later.  When Yaeger refused, the hotel manager called the police.

Hillsborough County Deputy Sheriffs Michael Lowry and Benjamin Thompson arrived and in their presence at Yaeger's room the manager again told Yaeger to vacate the premises.  (Exhibits G and I attached to Yaeger's opposition, Docs. 111-7 and 111-9)  Yaeger refused, claiming that he was not trespassing because he had two more hours before required to check-out and that a search warrant was necessary to enter the room.  Dep. Lowry responded that a search warrant was not necessary and he would enter the room by force if necessary.  Yaeger admits hearing the manager tell the officers, "I authorize you to force entry into this hotel room." (Fourth Amended Complaint, Doc. 96-1 at 9)  The manager gave the officers a master key to enter the room.

---

[3] These facts are as Yaeger either asserts in his pleadings or presents in opposition to the Motion to Dismiss, as well as facts that the district court can judicially notice from filings in other courts.

Dep. Lowry forced entry into the room to break the security chain that kept the door from fully opening.

Once inside the room Yaeger was handcuffed and seated at a table. Officers saw crystal methamphetamine, drug paraphernalia, and equipment to make fraudulent identification cards. After the deputies' supervisor arrived, Yaeger signed a consent to search. Dep. Thompson found that a fugitive warrant was outstanding for Yaeger, who admitted that the warrant applied to him even though issued under one of several aliases. (Exhibit I, Doc. 111-9) Yaeger was transported to the county jail.

Based on the events at the hotel and Dep. Lowry's reports, the State Attorney charged Yaeger with three misdemeanors (trespassing, possession of drug paraphernalia, resisting arrest without violence) and one felony (trafficking in illegal drugs).  (Exhibit J, Doc. 111-10)

After his arrest at the Residence Inn, Yaeger was returned to Virginia where he pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine.[4] The Virginia federal charges alleged that, from November 2015 until his arrest on April 15, 2017, Yaeger and others conspired in Virginia, Florida, and New Jersey to traffick in drugs, produce counterfeit debit and credit cards, and defraud banks.  Each of the three charges was tied to his

---

[4] United States District Court for the Eastern District of Virginia, case number 1:17-cr-231-001. (Judgment, Exhibit A, Doc. 111-1)

activities at the Residence Inn.  According to the statement of facts, which was
incorporated into the plea agreement, (1) regarding the drug trafficking:
"Yaeger utilized hotels and apartments in Virginia, Florida, New Jersey, and
elsewhere, to, among other things, receive, possess, and distribute
methamphetamine for profit" (Exhibit 111-2 at 2, ¶7); (2) regarding the
producing fraudulent cards: "In and around April 2017, in Hillsborough
County, Florida, Yaeger possessed access device making equipment, to wit: a
magnetic reader/writer MSR 605, a Datacard SP75 printer, and numerous
blank plastic cards with magnetic strips" (Exhibit 111-2 at 4, ¶12(e)); and
(3) regarding the scheme to defraud banks: "Yaeger relocated to at least three
districts, including the Eastern District of Virginia, the Middle District of
Florida, and the District of New Jersey, to evade detection and apprehension by
law enforcement" (Exhibit 111-2 at 6, ¶15(a)).  Under the "Forfeiture
Agreement" provision in the plea agreement, Yaeger "agree[ed] to forfeit all
interests in related assets . . . including but not limited to the following specific
property: . . . computers, telecommunications devices, and other electronic
devices seized at a hotel room utilized by the defendant in Hillsborough County,
Florida, in April 2017 . . . ." (Exhibit 111-3 at 8–9, ¶15).

    In his sentencing memorandum for the federal conviction, Yaeger
admitted (1) that the Florida state court drug charges based on the Residence
Inn arrest were related to the Virginia federal charges: "On April 15, 2017,

Mr. Yaeger was arrested in Hillsborough County, Florida on drug charges related to the instant drug conspiracy" and (2) that the Florida state charges were dropped because of the federal charges in Virginia: "On August 21, 2017, the Florida state charges were dropped in favor of the federal prosecution." (Exhibit 111-4 at 2)  Also, in his sentencing memorandum Yaeger asserted entitlement to credit for time detained in Florida on the related state charges: "Finally, because Mr. Yaeger was held in Florida State custody on charges related to the instant federal case, and because those charges were dropped in favor of federal prosecution, Mr. Yaeger requests that the time he spent in Florida state custody awaiting trial — four months in total — be credited to his federal sentence." (Id. at 1–2)  The judgment in the federal case shows that Yaeger's request was granted:  "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ONE HUNDRED SIXTY-EIGHT (168) MONTHS, with credit for time served, including time served in state custody in Florida awaiting trial." (Exhibit 111-1 at 2)

## IV. ANALYSIS

Yaeger alleges that Dep. Lowry's entry into the hotel room violated his Fourth Amendment right (1) to be free from both a warrantless search and an unlawful seizure of his person and property and (2) to be free from an arrest without probable cause.  Yaeger requests compensatory damages of

$7,800,000.00; he does not specifically request relief from the Virginia federal conviction, which, of course, he cannot obtain in a civil rights action. In other words, Yaeger cannot **directly** challenge his criminal conviction in this civil rights action. Nevertheless, under *Heck v. Humphrey*, 512 U.S. 477 (1994), Yaeger cannot proceed with this civil rights action if a favorable decision would question the validity of the Virginia federal criminal conviction. In other words, Yaeger cannot **indirectly** challenge his criminal conviction in this civil rights action.

## A. *Heck v. Humphrey*:

If a state prisoner challenges the fact or duration of confinement, the exclusive federal remedy is a writ of habeas corpus. *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973). This long-standing principle was further explained in *Heck v. Humphrey*, 512 U.S. at 486–87:

> We hold that, in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck* requires dismissal of the civil rights complaint if a ruling in the plaintiff's favor questions the validity of the conviction or sentence. A claim under Section 1983 does not exist unless the plaintiff first prevails on habeas corpus.

"[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489–90. *See also Spencer v. Kemna*, 523 U.S. 1, 21 (1998) ("[A] state prisoner may not maintain an action under 42 U.S.C. § 1983 if the direct or indirect effect of granting relief would be to invalidate the state sentence he is serving."). Moreover, although it involved the indirect challenge to a state conviction, *Heck* applies to an indirect challenge to a federal conviction. *Brestle v. United States*, 414 F. App'x 260 (11th Cir. 2011)[5] (applying *Heck* to a civil rights complaint that challenges the underlying basis of a federal conviction).

Yaeger alleges that he was subjected to both an "unlawful seizure of his person" (Count One) and an "arrest without probable cause (Count Two). (Doc. 96 at 15 and 17). As outlined above, in the federal conviction Yaeger admitted that his arrest at the Residence Inn is related to the federal charges. Although Yaeger now disputes the inter-relationship, the linchpin to the inter-relationship is that the federal conviction is for conspiracy — not just

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

trafficking or possessing drugs in Virginia — and the conspiracy admittedly involved the events from the Residence Inn. Consequently, Yaeger's entitlement to relief in this civil rights action is barred under *Heck* to the extent based on his contention that he was unlawfully arrested.

However, *Heck* does not necessarily bar a claim based on an unlawful search and seizure of property. In Count One Yaeger alleges that his rights under the Fourth Amendment were violated by a "warrantless search and unlawful seizure of his . . . property." (Doc. 96 at 15) Whether *Heck* bars such a claim is highly fact dependent, as *Weaver v. Geiger*, 294 F. App'x 529, (11th Cir. 2008), explains:

> We have previously held that such claims can be brought even without proof that the underlying conviction has been called into question. *See Hughes[ v. Lott]*, 350 F.3d [1157,] 1160 [(11th Cir. 2003)] ("Because an illegal search or arrest may be followed by a valid conviction, . . . a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims."). However, we have also determined that *Heck* would still preclude those claims that "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Id.* at 1160 n. 2. In order to determine whether such a negation would occur, we must look at both "the claims raised under § 1983" and "the specific offenses for which the § 1983 claimant was convicted." *Id.*

*Accord. Baxter v. Crawford*, 233 F. App'x 912, 916 (11th Cir. 2007) (quoting *Hughes*). Based on the undisputed facts in this case, *Heck* bars Yaeger's claim of unlawful search and seizure of his property because the items seized from the hotel room were both identified as part of the conspiracy that was the subject of

- 10 -

the Virginia criminal prosecution and forfeited under the terms of the plea agreement.

Consequently, all claims alleged the Fourth Amended Complaint are barred under *Heck.* Yaeger fails to state a claim for relief because the complaint fails to allege that the conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck*, 512 U.S. at 487. This dismissal is without prejudice to Yaeger's re-filing his Section 1983 claim after invalidation of the conviction.

## B  Merits:

Alternatively, even if not barred under *Heck,* Yaeger's claims are meritless. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released."); *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.") (internal quotations omitted).

## 1.  Count One:

Yaeger sues Deputy Sheriffs Michael Scott Lowry, Ryan M. Balseiro, Shawn M. Lunghi, Breanna C. Rodriguez, and Benjamin D. Thompson for violating his Fourth Amendment right to be free from a warrantless search and unlawful seizure of his person and property.  (Doc. 96 at 15)  The relevant undisputed facts are (1) that the hotel manager ordered Yaeger to vacate the premises, (2) Yaeger refused even after being told that his refusal would result in forced entry into the room because Yaeger was then a trespasser, and (3)  Dep. Lowry entered the room and arrested Yaeger for trespassing.  No arrest warrant was required because Dep. Lowry was witnessing the offense and no search warrant was required because the officers could legally enter the room, after which Yaeger signed a consent to search.

## 2.  Count Two

Yaeger sues Dep. Lowry for violating his Fourth Amendment right to be free from arrest without probable cause.  (Doc. 96 at 17)  As explained immediately above, Yaeger's refusal to vacate the premises after being warned that he would be subject to arrest for trespassing established probable cause for his arrest.  Whether he had a couple hours remaining on his reservation is irrelevant to the lawfulness of his arrest for trespass; any dispute about the time remaining on his reservation was a state-law civil issue between he and

the hotel, not a civil rights violation allegedly committed by the officers who were authorized to force entry into the room to arrest Yaeger for trespassing.

### 3. Qualified Immunity:

"[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  And "[w]hile an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

For qualified immunity on a claim of unlawful arrest, an officer need not have actual probable cause, but only arguable probable cause. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003).  Arguable probable cause exists where " 'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [the][p]laintiff . . . .' " *Kingsland v. City of Miami, Fla.*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). The plaintiff bears the burden to "demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v.*

*Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Additionally, qualified immunity protects officers who make good faith mistakes. *Post v. City of Fort Lauderdale, Fla.*, 7 F .3d 1552, 1558 (11th Cir. 1993) (granting qualified immunity on the basis of arguable probable cause where the officers erroneously counted people in excess of a restaurant's maximum capacity), *modified*, 14 F.3d 583 (11th Cir. 1994) (*per curiam*).

Consequently, even if *Heck* is inapplicable and even if the officers lacked probable cause to arrest Yaeger, qualified immunity protects the officers from liability.

Accordingly, the motion to dismiss (Doc. 98) is **GRANTED**. The clerk must enter a judgment for Defendants and **CLOSE** this case.

ORDERED in Tampa, Florida, on _____9/29_____, 2023.

THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE